Case No. 22-1310, et al. T-Mobile USA, Inc. Petitioner v. National Labor Religions Court Mr. Harris for the petitioner, Mr. Lohr for the respondent Good morning, Counsel. Mr. Harris, please proceed when you're ready. Thank you, Your Honor. May it please the Court, my name is Mark Harris and I represent T-Mobile. This case concerns the definition of a labor organization under Section 2.5 of the NLRA. The NLRB initially held that since T-Voice as a whole did not adopt or endorse any of the proposals at issue here, they couldn't be group proposals, and because they weren't group proposals, T-Voice was not a labor organization. On remand, the Board changed its position and held that whenever a T-Voice representative makes a proposal on a representative basis, that somehow automatically becomes a group proposal, whether or not T-Voice plays any role in the process. The Board's decision is incorrect for a number of reasons. First, it violated the Board's long-established precedent about the meaning of group proposals. Second, the Board's finding of a pattern and practice of dealing was wrong and lacked substantial evidence. And third, the disestablishment remedy is arbitrary and capricious. Can I start with the first one? So, in our opinion that resulted in the remand that you referenced, we said on page 663 in the Federal Reporter version, the Court is left uncertain about what the record must show for the Board to find that an organization made group proposals as opposed to engaging in mere brainstorming. Is it enough that an employee representative makes a proposal while acting in a representative capacity? That standard is suggested by the result in Dillon-Storrs. And is that not what the Board did on remand? No, it didn't, Your Honor. This is really a crucial point in our argument. The Court, as Your Honor just stated, set this out as a line of cases, the majority of cases, holding that group proposals were required. And then Dillon-Storrs, on the other hand, which seemed to suggest that group proposals were not required. What the Board did on remand was the Board decided that representative proposals are group proposals. Right. So, I get that. I mean, the way the Board framed its decision is to say that representative proposals are enough and we're going to deem them to be group proposals. But let's just forget that last part just for now. And I know that's the linchpin of your argument. But let's just, if that's just, you know, putting the gift wrapping paper on the package. The package, as I understand it, was to do exactly what we said was possible, which is to say that an employee representative makes a proposal while acting in a representative capacity. And that's enough. And then the organization can be deemed a labor organization. And so why does it matter that they framed it as that being a group proposal, whatever that means? What matters is the content of it. And the content is what we said, which is that is it enough that an employee representative makes a proposal while acting in a representative capacity? Yes. Well, I think it matters for a few reasons. The most basic one is that the agency obviously has to give a reasoned explanation of its precedents. I don't think it can just call anything a group proposal that it isn't one. But going more specifically to your point, I don't think it's an accident that the Board chose to go to use the group proposal rubric. I think the problem, the reason the Board did that, it didn't go with what this Court set out as being its interpretation of Dillon-Storrs. So you run into big problems if what you say is that there's a Dillon-Storrs option, which is that there doesn't have to be group proposals at all. One problem is how do you tell the difference between an individual proposal and a group proposal? I don't think this Court meant to say in the previous decision that it was approving of Dillon-Storrs as a correct interpretation or being consistent with its own precedent. I think the Court simply said we've identified this line of cases and this one other option. We would suggest that if you, under the Dillon-Storrs interpretation, the problem you have is what's happening here that makes this something which is a bilateral dealing between T-Voice as a whole and T-Mobile. For example, the group, the main example that the Board brings up is one instance where a woman named Dominique Jones made what they considered to be a proposal on behalf of her group, which was called the Dedicated Care Department. The Board wants to then say somehow... That's the dual monitors? Yes, Your Honor. The Board wants to say that somehow that should be attributed to T-Voice as a whole. The problem with that is that that would mean that any one individual T-Rep, and there are hundreds of T-Voice reps, any one of them could somehow turn the organization into a labor organization simply by making a proposal in the name of her constituents, let's call them. It's very hard to understand how that makes any sense. The Board also did something very interesting here, which is a second level of complexity. The Board did not just say that any type of proposal made by a rep counts as a group proposal or as a proposal that turns it into a labor organization. There are three possibilities of what a representative could do. A representative could make a proposal in her own name. Just take Dominique Jones as an example. She could make it in the name of her constituents or she could pass along one of their proposals. The Board says that only one of those creates a group proposal. If the representative simply says, this is what I think, I think this is a good idea, I'm speaking for myself. I work at this company. The Polaroid case says that won't work. That does not make a group proposal. That's out. If the Board, if the representative says, I'm going to just pass along something that I heard from one of my representatives. I'm just putting it into the system the way that the majority, the overwhelming majority of these proposals got made through the SharePoint system. Unedited, unscreened, just here they are. Here's the proposal. Take it. That also, under the EFCO decision, would not be enough to create a labor organization. Although the Board here equivocates a little bit on whether or not it would come out that way. But they don't rely on that. So they're saying the only scenario here where there's a group proposal is if a T-Boys rep, acting as a T-Boys rep, speaking on behalf of constituents, makes a proposal. Then it's a group proposal. I would suggest this is a completely unworkable system. This would mean, before you could ever figure out whether or not an entity was a labor organization, you'd have to inquire into the origin of the proposal. Where did it come from? So, counsel, I think I could imagine hypotheticals where those lines are difficult to draw. I'm struggling with why it's difficult here. And in particular, I wonder how you would ask us to think about T-Mobile's own statements. So Dominique Jones makes a request. First of all, it's on behalf of her entire group. So that might be one piece of evidence that it's a representative capacity. But after the fact, T-Mobile turns around and, I don't have the quote in front of me, but essentially says, T-Voice made this happen. T-Voice is doing a good job for you. And so in that kind of a situation where it's clear, it seems like that's a basis for the board to say, look, everyone understands that the individual was acting in a role as part of T-Voice and was credited for acting in that role. And in that situation, it seems like the line is pretty easy to draw. Well, the board did cite that evidence, but that was not the only basis on which the board came to this conclusion that she was acting in a representative capacity. The board, at length, went through each of these six examples and actually tried to go through and explain what was the origin of the proposal, where did it come from, why was it made. The Dominique Jones example, I'll concede, is a little bit clearer that she was speaking on behalf, or was trying to speak on behalf of her group. The other five examples, though, it's not clear at all. If you look at what the NLRB actually said in the remand decision, they based their conclusion on things like, well, there's an entry in the system and the entry says, uses this person's name. We're going to then just assume that if it's in the name, if the T-Voice rep listed her own name, we're going to assume then she wasn't passing along somebody else's suggestion, we're going to assume it was hers. The problem was that the record wasn't developed for that purpose in mind at all. The record was developed in the first case when the board took the position that this was not a labor organization. Those conclusions just simply don't follow. There's another level of this which is also problematic in the board's findings, which is that the board reversed its findings on five out of those six examples. So put aside Dominique Jones again for a minute. The other five were situations which came up during these national conventions. One of those cases, the board initially said, this was the example involving performance metrics. The board initially said there was no response by management. That was actually a finding that the board made. On remand, the board said, well, it doesn't really have to decide whether or not T-Mobile accepts this or not. It just has to contemplate it. That's not the standard. The standard, as the board has said many times, is that there has to be acceptance or rejection in word or in deed. Before you go any further, I'm just wondering whether all this is a red herring. Because if I look at the statute, the statute says that the committee or whatever it is, the organization, exists for the purpose in whole or in part of dealing with employers concerning grievances, etc. Exists for the purpose in whole or in part. Isn't the first thing that you would have to look at is what the charter is for T-Voice? Why was it established? If it exists for the purpose of a couple examples that don't conform to the purpose, it proves nothing. And the charter is on page finally, page 761 of the appendix. That's the charter? I believe that's the charter, Your Honor. What the court, what the board has done consistently, there are lines of two lines of Let me finish one other thought that I have. The law has a doctrine to take care of situations like you're describing. And it's called de minimis non curat lex. What is it, 3,000 different complaints or whatever from customers and then six possible instances in which the employer or employee talks about employee stuff? I completely agree. It really was de minimis. That's what the dissenting member of the board felt. And this is reinforced by the fact that we're literally now seven years later. And the board makes this pretty extraordinary statement in their brief that there are lingering effects of whatever they think was the original composition or purpose or functioning of T-Voice. It's hard to imagine how there could be any lingering effects whatsoever this many years later. In fact, I'll go even further. This theory that an individual T-Voice rep by making a proposal can somehow now turn the overall organization into a labor organization. That would mean then that seven years later the board should be taking into account what one person did who's long gone because their terms were six or nine months. So the board has now said effectively one person who did something seven years later after the company has disclaimed that that's the purpose of it after the board itself has found that there were no further employee pain points being contemplated past February 2016 based on what one person did or even a handful of people did the correct result is disestablishment that's very, very hard to understand. In the charter it refers to, there are a lot of acronyms here but one of the things that sticks out is that it seems to be dealing with exclusively with customers and front, the relationship between customers and front line. Who is front line? So this is all about the relationship between customers and front line people. That's the charter. And I don't see how six instances compared with 3,000 changes that purpose of the charter. Did you raise a purpose argument? I thought you were talking about dealing it. So it's all folded in together The standard is that the group exists at least in part for the purpose of dealing with the employer. The question is, does the purpose of dealing with is that judged by what actually happens which is what some board cases say or is it judged by documents that would say what the purpose is What the board has often said is, we look at what actually happens They did rely on statements from T-Mobile, from the employer But they also, as I said, they went through excruciating detail to talk about these examples as if the examples mattered So that was the basis the board gave for its decision I want to just mention one more thing Very briefly ask about how you're reading the charter So I think clearly one part is work on how CSRs work with customers The second sentence here is provide a vehicle for front line feedback Vehicle for CSR feedback and create a closed loop communication with T-Mobile's senior leadership team I think the way the board construes that is it's telling all the potentially represented employees this is your route for raising issues and getting them addressed by management Why is that wrong? I don't think that's what it meant If this was really the vehicle for the front line, the CSRs to complain about their jobs or talk about terms and conditions of their jobs I don't think you'd have only six examples I think you'd have many, many, many examples out of thousands of them I think the point is, and the board actually The board deals with this in an unpersuasive manner The board wants to argue now that anytime you're dealing with how customers interact with the company well that automatically implicates employee issues because they're the ones who have to deal with it That can't be the standard. That's the way they get around one of their factual findings the one that I just mentioned Can I follow up on that? The example that is the prime example of getting dual screens Why isn't that a customer enhancement thing because it enables the front line people to better handle customer complaints It is, your honor Did you argue that? Was that argued by the employer? I don't think it was argued explicitly that way below So we haven't pushed that on appeal here, but it's definitely to answer the question each of these examples I could see a lot of situations in which a customer service representative is going to come to management and say the best way I can deal with customers is if you change my terms and conditions so that I can do the following Right, but I don't think we have examples of that But if that were the case then would you say that that's not germane to whether the organization is acting as a labor organization because they're still talking about terms and conditions No, I think if it were explicitly terms and conditions that I would do a better job if I had an extra hour off every day that would be a term and condition I'd serve the customers better if I had an extra hour Yes, but these are all much more closely tied  I just don't have the answer to this It may well be explored What's the reference to internal and external customers? Who are the internal customers? I'm not sure, your honor I guess where I'm going is if it's internal customers that's how you raise stuff that matters to you as opposed to the external customers who buy our product then would that mean that by mission and objectives by identifying, discussing, and communicating solutions for roadblocks for internal and external customers I'm not sure what that means I can offer a hypothetical because I wondered about the same and the way I took it was that an internal customer is an existing customer and an external customer is a potential customer and the front line deals with both The only thing I want to say about this at this point before I sit down is that these were not the rationales on which the board rendered the decision I understand the court's asking the questions anyway but it based its decision on those examples and on a few generic statements that the company made not even the charter Thank you, your honor Okay, thank you, Mr. Harris We'll give you some time for rebuttal Mr. Laro, we'll hear from you now Good morning, your honors May it please the court, I am Greg Laro for the National Labor Relations Board If your honors would like I would like to start with the issue of the board's determination that proposals made by individual members of a group acting in a representative capacity count as a group proposal for the purposes of Not to recap too much but in remanding, the court acknowledged that the board can have a group proposal requirement but that the board's assumption that individual proposals didn't qualify potentially ran counter to some precedent and as well as the board's observation that under the act, informal organizations that is ones that don't necessarily have a formal mechanism for adopting proposals can count as well and in answering the court's question would individual proposals suffice the board answered that in the affirmative it looked at the text of the act in the legislative history it looked at the case law including that which the court cited and came to a reasonable conclusion consistent with the act itself that yes, proposals by individual group members acting in a representative capacity do suffice as group proposals and I'm happy to answer any questions So it's true I think that we didn't conceive in our opinion of those individual proposals as being group proposals that's the board added that and maybe with good reason the board added that but I didn't read our decision to contemplate that those would be considered group proposals, they still might be enough to render the organization a labor organization And that is the key point, whether it's a labor organization as to I believe you call it the packaging as opposed to the contents the board came in in its first decision saying we have a group proposal requirement and I view the court as saying that alone is fine but what about this issue of individual group members making proposals in a representative capacity Can you talk a little louder please? Can you talk a little louder? Can you hear me now? I will lean in, thank you So you were saying about the addition of group proposals which appears to be an add-on to the way we described the Dillon's store end of the spectrum Right, I view it as I was saying as the board coming in pre-remand with a group proposal requirement and the court saying we understand that you cite some cases for that DuPont, AFCO, those four but the court observed specifically that none of them say, none of them hold that it's not a group proposal requirement or if you prefer sufficient for dealing where individual members of the group make proposals while acting in a representative capacity and what's interesting about that is my opponent says well we have those four same cases why don't we just return to that approach and those cases but that's exactly what led to the remand, the court said those cases don't answer the question adequately, they leave it open and potentially conflict with cases like Dillon and again the idea that an informal structure can suffice but at the end of the day the question before the court is whether the board's view is reasonable and consistent with precedent and the act and the answer is it is and I think just pointing to those four cases and saying the board departed from that isn't sufficient because the court explained those cases don't answer the question, they don't hold that individual proposals don't suffice and I think the board then applied that standard and one thing I want to get out of the way is my opponent suggested that the board switched from the first time on some specific factual findings what actually happened was the first time the board is saying these aren't group proposals and that's essentially the end of the analysis and because of that it actually drops a footnote, this is footnote 21 of the first decision saying because we find these are not group proposals and therefore under our framework you don't have dealing in a labor organization, we don't need to address whether these proposals involve statutory conditions we don't need to get there, so when my opponent says well the board switched as to that, it didn't I acknowledge there's one instance where I can't recall frankly if it was just a factual recitation in the first case the board noted there was one proposal you may recall the one about metrics at the 2015 summit where Tolman, the head of TVOI said I don't think there was any follow up that's what the board said the first time but the record actually shows she just said she didn't follow up and this time the board noted additional evidence where multiple managers forwarded the proposal in question for consideration so I'm just saying the board this time properly considered all the record evidence last time it was focused on a group proposal I just don't see this contradiction or 180 Can you address these questions about the charter because as I read it, the board does cite the charter and it interprets it as a statement that TVOI is going to represent the front line workers in dealing with management and that probably that plays a big role in somehow finding that six instances is enough out of the thousands but the question has been raised about whether the board is reading that charter correctly so can you address that? I think your honor's statement is absolutely right the board is reading the charter as indicating that TVOI's representatives, their called representatives will represent other employees and frankly I don't think their representative status is disputed here as to the charter, it clearly says and you discussed it this morning that we can raise both customer both customer and front line pain points front line pain points are employee pain points and it's not just the board treating it that way the employer did. Employer managers their own representatives and TVOI's representatives all understood that they could raise any pain point under this program Is that right? So just as a matter of semantics front line pain points as the board understands it by definition are CSR's raising questions about their own terms and conditions? Absolutely That's not what you said in your brief You said that the program the TVOI's exists to enhance to enhance customer and front line experience by identifying, discussing communicating solutions for road blocks for internal and external customers I didn't say anything in there in your brief anyway about enhancing the experience of employees Well two things your honor, one is as we discussed front line means CSR's I would say internal customers likely means employees too but I'm looking at the record as a whole How did the employer run this program? What did it encourage employees and in particular TVOI's representatives to do? It encouraged them, this is the undisputed testimony to go out and get all pain points This was understood including by the employer as getting employee pain points as well as customer pain points They claim they stopped doing the latter at some point getting employee pain points but I don't think it's really disputed or not reasonably that the charter encourages the TVOI's representatives and employees to bring forth complaints about their own working conditions And are you looking at it would be helpful if you look specifically at the charter and tell us exactly what you're relying on I'm relying on the charter and how it was understood and expressed in the testimony, meaning that's what happened on the ground As the board noted, it's undisputed that the employer's agents How do you know that any one of the employees in the six instances were invoking the charter? How do you know that? There's no evidence that I've seen indicating that they were invoking the charter at all Well I see your honor, but a couple things As was also discussed this morning, in establishing a labor organization we're looking at both the purpose, as you noted the access for the purpose in whole or in part of dealing with the employer, but we also look at what actually happened, and here's what actually happened After setting up an organization... The statute tells you to look at the purpose, it doesn't say anything about anything else Well the case law says both the purpose and what the organization actually does Alex operated as evidence of the purpose, is that the idea? I think what happens is evidence of the purpose I think both are important Is that a preponderance statement? By a preponderance of the evidence it was operated to enhance the employees with respect to grievances, for example Because if that's the test, 3,000 instances on one hand, and 6 on the other you'd lose Well your honor, the question is whether the evidence shows a pattern or practice, both the purpose and what actually happened And what actually happened is, first of all T-Mobile set it up to work this way They did say, you are representatives, go out and get your employees' comments, set up regular meetings where the T-Voice representatives were invited to come up with proposals and then the employer accepted in a couple cases and in other cases, considered or indicated it would consider those proposals That is a pattern or practice of dealing under settled law, and my opponent cites no case saying 6 instances isn't enough When you look at the cases they cite One, purpose matters, there was one instance where it was unintentional You have examples of an employer having a program for 3 years which they said was not meant to deal with statutory conditions and they slipped, or I think the board used the word strayed once That's not what happened here This is the way T-Mobile set up the program and intended it to run, and 6 instances is enough Now the only way you get 3,000, I think that's a bit of a misnomer is looking at SharePoint, but what the board is looking at is the meeting and direct contact aspects The company set it up so you would have these meetings and during those meetings, there were multiple instances of proposals being made and accepted or considered and that's dealing If you take my opponent's approach and just say Well, we've got 2 aspects to this program One might look like dealing, because they cite no case saying 6 instances aren't enough, but we can just wash it away or dilute it with this more ministerial SharePoint program and we can wash our hands of it I don't think that makes sense, because as we point out in our brief an employer could have something that looks like a program I mean, looks like a labor organization that has dealing, 6 instances over several months in a manner that's consistent with the way the program is set up That's dealing under settled law That impacts employees. This domination of a labor organization is the most serious violation of 8.8.2 But then the employer could just say, well, we've got this other aspect We don't think dealing happens there, so it's okay And that's even putting aside, the board didn't address whether SharePoint itself involved dealing because it didn't feel it needed to It already had 6, or I prefer 8, instances of dealing over several months, and that's enough I don't think 6 out of 3,000 is the relevant comparison I think it's 6 intentionally over a period of several months And my opponent cites no case saying, that's not dealing Now my opponent, I just respond Could you just address the evidence of consideration So obviously that's one piece of this The other side obviously says you changed the test from acceptance or rejection to real or apparent consideration But even if you're right on that It does seem like you rely on things For example, an email forwarding a suggestion saying, we will consider this in the future or something to that effect I'm just curious, what is the board's position on what's sufficient? Do we need to think there was substantial evidence to find that later meeting actually happened and it was considered and that's the finding we're reviewing? I think it's first important in answering that question to go through all the evidence of acceptance and consideration we have that adds up to supporting the dealing Because out of the 6 or 8 instances 2 proposals were accepted I think with dual monitors that's acknowledged But also with the suggestion that we need a better script at one point to do our jobs better when we're talking to customers The employer said, we'll do We know we will update that to have a more realistic scenario So you have a couple instances of acceptance You have other instances where the employer indicated an intention to consider the proposal Like they took actual action They said, we will consider this, we will get back to you by the next meeting or sooner Do we need evidence that they intended to consider it? Or do we use that as circumstantial evidence that they did consider it? I think it's circumstantial evidence they did In fact, I would also say, if you take that specific action of indicating an intention to consider And I promise you, I say, interesting proposal I'm going to forward it up the line and we're going to get back to you by the next meeting or sooner, and you don't That could be an indication of an implicit rejection Or if you prefer rejection by word or deed It is not inconsistent with the rejection or acceptance standard Nor was the standard changed The standard is actual or apparent consideration That's from electromation Even after cases like DuPont and others that also use The acceptance or rejection standard A case like AFCO, both the board and the court Referred to actual or apparent consideration Proposals plus management consideration And I think we have that here We have a couple of acceptances We have clear indication of an intent to consider And even if the promised action of further consideration Didn't happen, that appears to be an implicit rejection What it isn't My opponent suggests Boy, we've gotten to the point of just passive knowledge of the proposal Passive consideration, whatever that is, is sufficient That's not what the board found It identified specific actions and decisions by the employer Again, a couple times accepting Other times specifically saying, we'll give that consideration And get back to you soon And if they don't, I guess it suggests They decided not to go that direction They decided to reject it But I don't think as my opponent says Wow, we can no longer even tell what counts as a group proposal Because as your honor said We can tell in this case And T-Mobile indicated that we could tell When they would say, accept the proposal about dual monitors And then issue a newsletter saying, great job by T-Voice They weren't confused about whether it was a group proposal And there's other evidence of that I believe with some of the metrics proposals There were instances where they said We're going by the issue raised Or other categories, not the individual So unless your honor has further questions I thank the court for its time I don't think so. Thank you, Mr. Allaro Mr. Harris, we'll give you three minutes for rebuttal I want to make a few points The first point is, Judge Garcia, to your last question About the six examples and the question of whether There was a flip-flop on the board's reasoning One flip-flop that we've already identified has to do with As we just talked about Whether or not the What the purpose was Of Excuse me, whether or not the proposal was considered Or was not considered Of the six examples, four of them concern a different flip-flop Which is whether or not these were employee Pain points or whether these were customer pain points And it's absolutely explicit In the original board's decision That the board deemed the device emulators The phone exchanges, the device setup And I think also the device insurance As all being customer issues Not employee issues. I won't read all the quotes But it's absolutely crystal clear in the decision I'll read one quote. This is from the board's first decision The record does not indicate that T-Board's representatives Were involved in this matter other than by entering Suggestions into SharePoint. There is no evidence that T-Board's representatives discussed any employee pain point Or idea to resolve a pain point at these meetings The board has completely Changed its view on whether something's an employee Pain point or a customer pain point And its rationale for that is, well, if it's a customer Pain point, it must also affect the employees But that's not the distinction that the board drew the first time The board, on page two of its first decision Clearly distinguished between customer issues Which are called customer pain points And a small number of employees' terms and conditions Which are called employee pain points So that's another problem with the switch in their factual findings Going back to the first issue we began with Which was representative capacity I would challenge the description that this is a Or characterization that this is an add-on The board explicitly and deliberately Chose to take this new approach And shoehorn it into The group proposal category And that raises a fundamental question Which is what group are we talking about? Where's the group? There is no discussion anywhere in the board's decision about what is the group If this is a group proposal, what's the group? The only group I can think of, which they don't say Because they don't say anything about this Is that it's the group of that rep and that rep's constituents The 10 or 15 or however many people it is But once you say that, then it makes no sense That this is being charged against the entire organization If Dominique Jones, on behalf of the dedicated care department That group makes a proposal Why do you disestablish T-voice altogether? How many regional T-voice things Around the country? There are, I believe, somewhere between 10 and 20 It's changed over time Call centers There are something like a few hundred T-voice reps Altogether In these various places where they have call centers Is there any indication that in any of these six Examples that there was communication Between one regional T-voice office And another? No, absolutely not. In fact, the converse The board said the first time That these That there was no Communication, there was no screening There was nothing going on That's why the first time the board decided That T-voice could not be held responsible That this was a group proposal Because there was no evidence that T-voice Had anything to do with what individual representatives were proposing The board hasn't moved off that They've just changed the definition of the group And they're hoping that by the switcheroo It'll be attributed This group is that group, but they're not One final point I'll just mention I've heard nothing from the board at all To explain the passage between 2016 and 2023 The board made explicit findings in its decision That employee pain points were no longer considered After February 2016 It's in the brief It's on the brief on page 55 I believe on page 7 So why is it being disestablished? They just don't have an answer to that The court has no further questions
judges: Srinivasan, Garcia, Randolph